**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CENTURY FOUNDATION,<br><br>    One Whitehall Street, 15th Floor<br>    New York, NY 10004<br><br>            Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT<br>OF EDUCATION,<br><br>    400 Maryland Ave, SW<br>    Washington, D.C. 20202<br><br>            Defendant. | Civil Action No. 18-cv-3299 |

## COMPLAINT

1.     Plaintiff The Century Foundation ("TCF") brings this action against the United States Department of Education ("ED" or "Department") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

3.     Venue is proper in this district pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 28 U.S.C. § 1391(e) because plaintiff TCF resides in and has its principal place of business in this District.

## PARTIES

4.      TCF is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public.  TCF's mission is to foster opportunity, reduce inequality, and promote security at home and abroad.  To further its mission, TCF gathers information, including through responses to FOIA requests submitted to government agencies, in order to inform the public through disseminating documents, reports, analyses, and commentary via, *inter alia*, its website, social media, press releases and other comments to the media, and regulatory comments to government agencies.

5.      TCF has its principal place of business at One Whitehall Street, New York, NY 10004, which is located within this District.

6.      Defendant ED is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  ED, in its current form, was created by the Department of Education Organization Act of 1979, 20 U.S.C. § 3401 *et seq.*  ED has possession, custody, and control of the records that TCF seeks to obtain and which ED is unlawfully failing to disclose.

## STATEMENT OF FACTS

7.      Under the Higher Education Act of 1965, as amended ("HEA"), an "institution of higher education" means an educational institution that, *inter alia*, is a "public or other nonprofit institution."  HEA § 101(a)(4); 20 U.S.C. § 1001(a)(4).  Separately, the HEA includes a category of institutions that are considered "institution[s] of higher education," which include a category of institutions known as "proprietary institution[s] of higher education."  HEA § 102(a)(1)(A); 20 U.S.C. § 1002(a)(1)(A).  A "proprietary institution of higher education" is defined as

something other than a "public" or "nonprofit" institution of higher education.  HEA §
102(b)(1)(B); 20 U.S.C. § 1002(b)(1)(B).

8.     Department regulations also distinguish between "public" institutions of higher
education and "private nonprofit" institutions of higher education, on the one hand, and
"proprietary institution[s] of higher education," on the other.  *Compare* 34 C.F.R. § 600.4 *with*
34 C.F.R. § 600.5.

9.     Under the HEA and Department regulations, proprietary institutions of higher
education are subject to certain requirements that are inapplicable to public and non-profit
institutions of higher education.  For example, proprietary institutions of higher education must
derive at least 10 percent of their revenue from sources other than Title IV, HEA program funds.
*See* HEA § 487(a)(24), 20 U.S.C. § 1094(a)(24); 34 C.F.R § 668.14(b)(16); 34 C.F.R. § 668.28.
In addition, most for-profit programs must "prepare students for gainful employment in a
recognized occupation," HEA § 102(b)(1)(A)(i), 20 U.S.C. § 1002(b)(1)(A)(i), and are therefore
subject to the Department's disclosure and accountability requirements set forth at 34 C.F.R. Part
668 Subpart Q.  *See also* Program Integrity: Gainful Employment Final Regulations, 79 Fed.
Reg. 64890 (Oct. 31, 2014).

10.    In recent years, numerous proprietary institutions of higher education have
submitted applications to the Department seeking approval for changes in ownership resulting in
changes in control and changes in status from proprietary to either nonprofit or public.

11.    As an example of one such conversion, on August 11, 2016, the Department
issued a letter to the Center for Excellence in Higher Education in which the Department
approved a change in ownership for numerous institutions, but denied the application by those
institutions to participate in the Title IV programs as nonprofit institutions.  A redacted version

of this letter has been made available by the Department at:

https://www2.ed.gov/documents/press-releases/08112016-cio-decision.pdf.

12.     In a similar example, with a different outcome, Kaplan University, a proprietary

institution of higher education, recently entered into a transaction with Purdue University, a

public institution, whereby Purdue, through its affiliate Purdue NewU, Inc., agreed to acquire

certain assets of Kaplan University, with the successor of Kaplan University to be owned and

operated by Purdue University as a separately accredited institution known as Purdue University

Global.  *See* Dave Bangert, *Final OK on Purdue-Kaplan deal came with conditions, accreditors*

*say,* Journal & Courier, (March 6, 2018) *available at*:

https://www.jconline.com/story/news/2018/03/06/unqualified-yes-conditions-tied-purdues-

takeover-kaplan-university/399922002.  In September 2017, ED reportedly "'preliminarily

concluded' that it had no objections to the deal."  *See* Mitch Gerber, *Purdue's Purchase of*

*Kaplan Gets Go-Ahead from Education Department*, Chron. of Higher Ed. (Sept. 19, 2017),

*available at*: https://www.chronicle.com/blogs/ticker/purdues-purchase-of-kaplan-gets-go-ahead-

from-education-dept/120180.

13.     The Department has stated that it "shares [the] concern" expressed by some "that

when a proprietary school owner converts a school to nonprofit status, the arrangement might be

structured to retain the for-profit incentive and the management behaviors for the former owner

who continues to hold a significant role at the institution."  Letter from Undersecretary Ted

Mitchell to Representative Rosa L. DeLauro (Sept. 9, 2015).  The Department has further stated

that "[s]chools that want to convert to non-profit status need to benefit the public.  If the primary

beneficiary of the conversion is the owner of the for-profit school, that doesn't meet the bar.  It's

not even close."  U.S. Department of Education Press Release, "Education Department Denies

Request for Chain of For-Profit Colleges to Convert to Non-Profit Status" (Aug. 11, 2016),

*available at*: https://www.ed.gov/news/press-releases/education-department-denies-request-chain-profit-colleges-convert-non-profit-status.

<u>DREAM CENTER FOIA I</u>

14.     On March 7, 2017, TCF submitted a FOIA request to ED requesting information regarding the publicly announced intent by the Dream Center Foundation ("Dream Center") to purchase institutions of higher education owned by the Education Management Corporation ("EDMC").  A true and correct copy of that request (hereinafter "Dream Center FOIA I") is attached hereto as Exhibit 1.  More specifically, the Dream Center FOIA sought copies of communications between officials from the Department (including the Office of Federal Student Aid ("FSA")) and a list of enumerated individuals.  *Id.*  The request also sought copies of communications between EDMC and officials from ED/FSA.  *Id.*

15.     On March 14, 2017, ED acknowledged its receipt of Dream Center FOIA I, stated that it had "forwarded" the request "to the primary responsible office(s) for action," and assigned tracking number 17-01189-F to the request.  A true and correct copy of this communication is attached hereto as Exhibit 2.

16.     On March 28, 2017, ED sent an email to TCF in which it "inform[ed]" TCF that it "will be unable to respond to [Dream Center FOIA I] within 20 working days of having received the request, nor within the 10 day extension for complex and voluminous material."  The Department "apologize[d] for any inconvenience" and "assured" TCF that its "request will be processed as soon as possible."  The Department further informed TCF that if it didn't receive a response within 30 additional days, that it should check the status of the request on the

Department's website.  A true and correct copy of this communication is attached hereto as Exhibit 3.

17.     On April 5, 2017, the Department granted TCF's request for a waiver of fees associated with Dream Center FOIA I.  A true and correct copy of this communication is attached hereto as Exhibit 4.

18.     On August 10, 2017, TCF employee Tariq Habash spoke to ED employee Michael Johnson about the status of the request.  That same day, Mr. Habash sent an email in which he recounted his conversation with Mr. Johnson and asked for status updates regarding a number of FOIA appeals and requests, including Dream Center FOIA I.  A true and correct copy of that email is attached hereto as Exhibit 5.

19.     On February 12, 2018, Mr. Habash telephoned the Department's FOIA Service Center requesting an update on the status of Dream Center FOIA I.  Unable to reach a Department staffer, Mr. Habash left a voicemail requesting an update.

20.     On February 26, 2018, Mr. Habash again telephoned the Department's FOIA Service Center requesting an update on the status of Dream Center FOIA I.  Unable to reach a Department staffer, Mr. Habash left a voicemail requesting an update.  Later that day, Mr. Habash was copied on an email from EDFOIAManager@ed.gov to numerous individuals in which the sender stated: "Hello all, Mr. Habash is seeking a detailed update on the requests listed above.  Please send direct response to the requester."  A true and correct copy of this email is attached hereto as Exhibit 6.

21.     Later that same day, Mr. Habash received an email from EDFOIAManager@ed.gov informing him that Dream Center FOIA I was "Pending with FSA;

status check was requested from the program office." A true and correct copy of that communication is attached hereto as Exhibit 7.

22.     On March 14, 2018, Mr. Habash sent another email in which he asked whether there was "an update on the status checks requested from each program office" regarding a number of requests, including Dream Center FOIA I. A true and correct copy of that communication is attached hereto as Exhibit 8. Mr. Habash never received a response.

23.     As of the filing of this request, TCF has not received a response to Dream Center FOIA I, originally filed more than a year ago.

DREAM CENTER FOIA II

24.     On July 20, 2017, TCF submitted a FOIA request to ED requesting information regarding communications among the Dream Center Foundation, DC Education Holdings, EDMC, and the Department. A true and correct copy of that request (hereinafter "Dream Center FOIA II") is attached hereto as Exhibit 9.

25.     On July 24, 2017, ED acknowledged its receipt of Dream Center FOIA II, stated that it had "forwarded" the request "to the primary responsible office(s) for action," and assigned tracking number 17-02247-F to the request. A true and correct copy of that communication is attached hereto as Exhibit 10.

26.     On or about August 10, 2017, Mr. Habash spoke to ED employee Michael Johnson about the status of the request. That same day, Mr. Habash sent an email in which he recounted his conversation with Mr. Johnson and asked for status updates regarding a number of FOIA appeals and requests, including Dream Center FOIA II. A true and correct copy of that email is attached hereto as Exhibit 5.

7

27.     On August 23, 2017, the Department wrote TCF a letter regarding the request in which it "inform[ed]" TCF that it "will be unable to respond to [Dream Center FOIA II] within 20 working days of having received the request, nor within the 10 day extension for complex and voluminous material."  The Department "apologize[d] for any inconvenience" and "assured" TCF that its "request will be processed as soon as possible."  The Department further informed TCF that if it didn't receive a response within 30 additional days, that it should check the status of the request on the Department's website.  A true and correct copy of this communication is attached hereto as Exhibit 11.

28.     On February 26, 2018, Mr. Habash telephoned the Department's FOIA Service Center requesting an update on the status a number of requests, including Dream Center FOIA II. Unable to reach a Department staffer, Mr. Habash left a voicemail requesting an update.  Later that day, Mr. Habash was copied on an email from EDFOIAManager@ed.gov to numerous individuals in which the sender stated: "Hello all, Mr. Habash is seeking a detailed update on the requests listed above.  Please send direct response to the requester."  A true and correct copy of this email is attached hereto as Exhibit 6.

29.     Later that same day, Mr. Habash received an email from EDFOIAManager@ed.gov informing him that the Dream Center FOIA II was "Pending with FSA; status check was requested from the program office."  A true and correct copy of that email is attached hereto as Exhibit 7.

30.     On March 14, 2018, Mr. Habash sent another email in which he asked whether there was "an update on the status checks requested from each program office" regarding a number of requests, including Dream Center FOIA II.  A true and correct copy of that email is attached hereto as Exhibit 8.  Mr. Habash never received a response.

8

31.     As of the filing of this request, TCF has not received a response to Dream Center FOIA II.

Kaplan/Purdue FOIA

32.     On August 10, 2017, TCF submitted a FOIA request to ED requesting documents or communications regarding the change in ownership or control of Kaplan University, to include any potential change of ownership, sale, or acquisition of that institution.  The request also sought the waiver of fees due to the fact that it was being made for non-commercial purposes.  A true and correct copy of that request (hereinafter "Kaplan/Purdue FOIA") is attached hereto as Exhibit 12.

33.     On August 14, 2017, ED acknowledged its receipt of the Kaplan/Purdue FOIA, stated that it had "forwarded" the request "to the primary responsible office(s) for action," and assigned tracking number 17-02418-F to the request.  A true and correct copy of that acknowledgment is attached hereto as Exhibit 13.

34.     On August 21, 2017, ED provided an "interim response" to the Kaplan/Purdue FOIA.  In that response, ED informed TCF that the request was forwarded to FSA and the Office of Post Secondary Education ("OPE").  According to the interim response, "[s]taff in OPE informed the FOIA Services Center that after a search of their files, they were unable to locate any documents that were responsive to your request."  Nevertheless, the Department also stated that the "Department is continuing to process" the request, that the "case file remains open," and that the file "will not close until the Department provides [TCF] with a response regarding outstanding responsive documents from FSA."  The interim response also stated that the Department's "final release letter will contain information related to your appeal rights of agency decisions."  A true and correct copy of the interim response is attached hereto as Exhibit 14.

9

35.     On August 30, 2017, Mr. Habash received an email from the Department regarding the Kaplan/Purdue FOIA in which the Department estimated that TCF would incur fees of $2,070 to process the request.  Although the Department did not facially require advance payment, the Department provided TCF with 10 business days "to provide assurance of payment" or to "narrow the scope" of the request.  On September 5, 2017, Mr. Habash responded and requested "clarification" on whether the request for a fee waiver that was included within the Kaplan/Purdue FOIA had been granted.  On September 25, 2017, Mr. Habash wrote again to the Department to ask whether there has been a "determination" on the fee waiver request and express a willingness to narrow the scope of the request.  A true and correct copy of this exchange is attached hereto as Exhibit 15.

36.     On September 25, 2017, the Department provided notification to Mr. Habash that the fee waiver request associated with the Kaplan/Purdue FOIA had been granted.  A true and correct copy of that notification is attached hereto as Exhibit 16.

37.     On October 6, 2017, Mr. Habash voluntarily narrowed the scope of the Kaplan/Purdue FOIA to include twenty-one Department employees and six "keywords."  On October 11, 2017, Mr. Habash forwarded this same communication back to the Department.  A true and correct copy of these communications is attached hereto as Exhibit 17.

38.     On February 26, 2018, Mr. Habash telephoned the Department's FOIA Service Center requesting an update on the status of a number of requests, including the Kaplan/Purdue FOIA.  Unable to reach a Department staffer, Mr. Habash left a voicemail requesting an update.  Later that day, Mr. Habash was copied on an email from EDFOIAManager@ed.gov to numerous individuals in which the sender stated: "Hello all, Mr. Habash is seeking a detailed update on the

requests listed above.  Please send direct response to the requester." A true and correct copy of this email is attached hereto as Exhibit 6.

39.     Later that same day, Mr. Habash received an email from EDFOIAManager@ed.gov informing him that the Kaplan/Purdue FOIA was "Pending with FSA; status check was requested from the program office." A true and correct copy of that communication is attached hereto as Exhibit 7.

40.     On March 14, 2018, Mr. Habash sent another email in which he asked whether there was "an update on the status checks requested from each program office" regarding a number of requests, including the Kaplan/Purdue FOIA.  A true and correct copy of that communication is attached hereto as Exhibit 8.  Mr. Habash never received a response.

41.     As of the filing of this request, TCF has not received a response to the Kaplan/Purdue FOIA.

*Exhaustion of Administrative Remedies*

42.     As of the date of this Complaint, ED has failed to (a) notify TCF of a final determination regarding the Dream Center FOIA I, the Dream Center FOIA II, or the Kaplan/Purdue FOIA (collectively, the "Conversion FOIAs"), including the scope of any responsive records ED intends to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

43.     Through ED's failure to respond to the Conversion FOIAs within the time period required by law, TCF has constructively exhausted its administrative remedies and seeks judicial review.

## COUNT I
### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Search for Responsive Records with respect to
### Dream Center FOIA I

44.     TCF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

45.     Through Dream Center FOIA I, TCF properly requested records within the possession, custody and control of ED.

46.     ED is an agency subject to FOIA and it must therefore make reasonable efforts to search for requested records.

47.     ED has failed to promptly review agency records for the purpose of locating those records that are responsive to Dream Center FOIA I.

48.     ED's failure to conduct adequate searches for responsive records violates FOIA.

49.     Plaintiff TCF is therefore entitled to declaratory and injunctive relief requiring ED to promptly make reasonable efforts to search for records responsive to Dream Center FOIA I.

## COUNT II
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Records with respect to
### Dream Center FOIA I

50.     TCF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

51.     Through Dream Center FOIA I, TCF properly requested records within the possession, custody, and control of ED.

52.     ED is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

53.     ED is wrongfully withholding non-exempt records requested by TCF by failing to produce records responsive to Dream Center FOIA I.

54.     ED's failure to provide all non-exempt responsive records violates FOIA.

55.     Plaintiff TCF is therefore entitled to declaratory and injunctive relief requiring ED to promptly produce all non-exempt records responsive to Dream Center FOIA I and provide an index justifying the withholding of any responsive records withheld under claim of exemption.

### COUNT III
### Violation of FOIA, 5 U.S.C. § 552
### Failure to Conduct Adequate Search for Responsive Records with respect to
### Dream Center FOIA II

56.     TCF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

57.     Through Dream Center FOIA II, TCF properly requested records within the possession, custody and control of ED.

58.     ED is an agency subject to FOIA and it must therefore make reasonable efforts to search for requested records.

59.     ED has failed to promptly review agency records for the purpose of locating those records that are responsive to Dream Center FOIA II.

60.     ED's failure to conduct adequate searches for responsive records violates FOIA.

61.     Plaintiff TCF is therefore entitled to declaratory and injunctive relief requiring ED to promptly make reasonable efforts to search for records responsive to Dream Center FOIA II.

### COUNT IV
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Records with respect to
### Dream Center FOIA II

62.     TCF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

63.     Through Dream Center FOIA II, TCF properly requested records within the possession, custody, and control of ED.

64.     ED is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

65.     ED is wrongfully withholding non-exempt records requested by TCF by failing to produce records responsive to Dream Center FOIA II.

66.     ED's failure to provide all non-exempt responsive records violates FOIA.

67.     Plaintiff TCF is therefore entitled to declaratory and injunctive relief requiring ED to promptly produce all non-exempt records responsive to Dream Center FOIA II and provide an index justifying the withholding of any responsive records withheld under claim of exemption.

**COUNT V**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Search for Responsive Records with respect to**
**The Kaplan/Purdue FOIA**

68.     TCF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

69.     Through the Kaplan/Purdue FOIA, TCF properly requested records within the possession, custody and control of ED.

70.     ED is an agency subject to FOIA and it must therefore make reasonable efforts to search for requested records.

71.     ED has failed to promptly review agency records for the purpose of locating those records that are responsive to the Kaplan/Purdue FOIA.

72.    ED's failure to conduct adequate searches for responsive records violates FOIA.

73.    Plaintiff TCF is therefore entitled to declaratory and injunctive relief requiring ED to promptly make reasonable efforts to search for records responsive to the Kaplan/Purdue FOIA.

**COUNT VI**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Records with respect to**
**The Kaplan/Purdue FOIA**

74.    TCF repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

75.    Through the Kaplan/Purdue FOIA, TCF properly requested records within the possession, custody, and control of ED.

76.    ED is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

77.    ED is wrongfully withholding non-exempt records requested by TCF by failing to produce records responsive to the Kaplan/Purdue FOIA.

78.    ED's failure to provide all non-exempt responsive records violates FOIA.

79.    Plaintiff TCF is therefore entitled to declaratory and injunctive relief requiring ED to promptly produce all non-exempt records responsive to the Kaplan/Purdue FOIA and provide an index justifying the withholding of any responsive records withheld under claim of exemption.

**REQUESTED RELIEF**

WHEREFORE, TCF respectfully requests the Court to:

(1) Order ED to conduct a search or searches reasonably calculated to uncover all records responsive to TCF's FOIA requests;

(2) Order ED to produce, by such date as the Court deems appropriate, any and all non-exempt records responsive to TCF's FOIA requests and an index justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin ED from continuing to withhold any and all non-exempt records responsive to TCF's FOIA requests;

(4) Award TCF attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant TCF such other relief as the Court deems just and proper.


Respectfully Submitted,


Respectfully submitted,

/s *Alexander S. Elson*
Alexander S. Elson* (N.Y. Bar 4809976)
National Student Legal Defense Network
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
alex@nsldn.org
(202) 734-7495

*Counsel for The Century Foundation*

*Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.


Dated:  April 16, 2018